# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

THOMAS BURNS and )
MARK LARSEN, )
　　　　　　　　　　　　　　　　　) No. 04 C 7682
　　　　　　　　Plaintiffs, ) Paul E. Plunkett, Senior Judge
　　　　　　　　　　　　　　　　　)
v. )
　　　　　　　　　　　　　　　　　)
FIRST AMERICAN BANK )
　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant. )
　　　　　　　　　　　　　　　　　)

## MEMORANDUM OPINION AND ORDER

Thomas Burns and Mark Larsen ("Plaintiffs") have filed a lawsuit against First American Bank ("Defendant" or "FAB") alleging violations of the Electric Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* and Regulation E of 12 C.F.R. 205 *et seq.* Defendant has filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the complaint for failure to state a claim or, in the alternative, a Federal Rule of Civil Procedure 12(f) motion to strike portions of the complaint that are barred by the statute of limitations. For the reasons set forth below, Defendant's motion to dismiss is denied. Defendant's motion to strike is also denied.

### Facts

Plaintiffs are residents of Illinois and FAB owns and operates two automatic teller machines ("ATMs") that are located in the lobby of the Chicago Hilton and Towers Hotel ("Hilton Hotel"). (Pl.'s Compl. ¶ 18.) On or about September 16, 2003, and again on November 23, 2004, Burns used

these ATMs. (*Id.* ¶¶ 16.) At that time, there was a fee notice on the exterior of the machine alerting customers that a $2.00 fee would be charged to non-FAB card holders for using the machine. (*Id.* ¶ 18.) However, the on-screen fee notice informed the customer that a $2.50 fee would be charged to non-FAB bankers. (*Id.* ¶ 19.) The actual fee that was charged was $2.50 per transaction. (*Id.* ¶ 20.) Similarly, on August 16, 2004, Larsen used one of the FAB-owned ATMs in the Hilton Hotel and also observed the fee notice on the exterior did not coincide with the on-screen fee notice. (*Id.* ¶¶ 22-25.) He was also charged $2.50 for each transaction. (*Id.* ¶ 26.) Plaintiffs filed a class action lawsuit on behalf of themselves and others who may be similarly situated. (*Id.* ¶¶ 27-28.) Plaintiffs allege that because the two machines contain contradictory fee information for over one year, they have violated EFTA by failing to comply with proper notice requirements. (*Id.* ¶¶ 29, 30, 32, 53.) Specifically, Plaintiffs state the contradiction of fee amounts results in inaccurate and improper disclosures as required under 15 U.S.C. § 1693 b (d)(3)(C). (*Id.* ¶ 48.) Consequently, Plaintiffs state that Defendant was prohibited from imposing any fee for the money transfer because the inaccuracy rendered the notices invalid. (*Id.* ¶ 54.) Plaintiffs contend that, as a result of the improper notices, they and other proposed class members have suffered damages. (*Id.* ¶ 55.)

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Village of Sussex,* 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Furthermore, any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader. *Id.*

## Discussion

Defendant has moved to dismiss Plaintiffs' complaint, stating that it was in full compliance with EFTA. EFTA was enacted in 1978 and its stated purpose is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. The primary objective. . . is the provision of individual consumer rights." 15 U.S.C. § 1693. Regulation E, which specifically addresses electronic fund transfers, implements EFTA. 66 Fed. Reg. 13409, *13410 (2001); *see also Metrobank v. Foster*, 193 F. Supp. 2d 1156, 1159-60 (S.D. Ia. 2002). EFTA's consumer protections efforts were later enhanced when Congress enacted the ATM Fee Reform Act of 1999, Pub. L. No. 106-102, §§ 701-05, 113 Stat. 1463 (1999). 66 Fed. Reg. 13409, 13410(2001). The ATM Reform Act originated as an amendment to the Gramm-Leach-Bliley Financial Modernization Act ("GLB"). *Id.*; *see also Bank of Am. v. City & County of San Francisco*, 309 F.3d 551, 565 (9th Cir. 2002). This amendment under the GLB was incorporated into EFTA as 15 U.S.C. §1693b(d)(3) and requires the disclosure of certain fees associated with ATMs. *Id.*

The notice requirements under 15 U.S.C. §1693b(d)(3) direct ATM operators to post fee notices in particular locations. Specifically, 1693b(d)(3) states in part:

> (3) Fee disclosures at automated teller machines.
> (A) In general. The regulations prescribed under paragraph (1) shall require any automated teller machine ("ATM") operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of--

(i) the fact that a fee is imposed by such operator for providing the service; and
(ii) the amount of any such fee.

(B) Notice requirements
(i) On the machine
The notice required under clause (i). . .with respect to any fee. . . shall be posted in a prominent and conspicuous location on or at the [ATM] at which the electronic fund transfer is initiated by the consumer.
(ii) On the screen
The notice required under clauses (i) and (ii) of [this section] with respect to any fee described . . . shall appear on the screen of the [ATM], or on a paper notice issued from such machine after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.

§ 1693b(d)(3)(B)(i)(ii).

To comply with § 1693b(d)(3)(i), (ii) the ATM operator must simply: (1) provide notice in a prominent and conspicuous location on the machine that a fee will be imposed; and (2) indicate the amount of that fee either on the screen or in paper form while the consumer is still able to cancel the transaction. 12 C.F.R. § 205.16 (April 21, 2005);12 C.F.R. § 205. 9(a)(1) (displaying the fee on a screen provides adequate notice, as long as a consumer is given the option to cancel the transaction after receiving notice of a fee). Also, that section of the implementing regulations indicates that no fee may be imposed unless an ATM operator complies with 1693b(d)(3)(B)(i)(ii). 15 U.S.C. § 1693b(d)(3)(C).

Plaintiffs do not dispute that Defendant has posted a notice on the exterior of the ATMs, nor do they contend that Defendant failed to provide notice of a fee amount on the screen before the consumer irrevocably completed the transaction. In fact, Plaintiffs establish that on FAB's ATMs located in the Hilton Hotel, there were prominent fee plaques on the exterior of the machines indicating that FAB charges a $2.00 withdrawal fee for non-FAB cards. Also, Plaintiffs concede that during the on-screen prompts, each was notified that the fee for the non-FAB cardholders was

$2.50 per transaction. Plaintiffs do not allege that they were informed of the $2.50 fee after irrevocably completing the transaction. Instead, they state that they followed the prompts, were informed of the $2.50 charge, and chose to complete the transaction. It was at the time Plaintiffs allege that they became aware that actual deduction was $2.50 as opposed to $2.00.

Despite this compliance with the statute, Plaintiffs contend that the statute was violated by the contradicting fee amounts in each of the notices. Plaintiffs claim that the inaccuracies between the exterior posting and the on-screen notice constitute an improper fee notice and a violation of 15 U.S.C. § 1693b(d)(3). Specifically, because there is a discrepancy in the posted fee amounts, Plaintiffs allege the language is not clear and readily understandable as is required by the statute. 12 C.F.R. § 205.9; 12 C.F.R. § 205.16.

While § 205.9 discusses the duties of fee disclosure on a receipt after a transaction, § 205.16 addresses specifically the required fee notices for ATMs. *Id.* We look to the rule commentary and find that to make a proper disclosure, an ATM operator may simply provide a general statement that a fee will be imposed for providing EFT services, so long as that notice is placed in a prominent and conspicuous location. 12 C.F.R. § 205.16(c)(1); 66 Fed. Reg. 13409, *13410 (2001). However, we must determine whether conflicting or inaccurate fee notices render the notices invalid.

The Seventh Circuit has not yet determined whether conflicting fee notices amount to improper disclosures under EFTA. When analyzing a statute, the Supreme Court has stated that "[a] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *U.S. v. Campos-Serrano*, 404 U.S. 293 (1971) (quoting *Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879)). It is well settled that in interpreting statutory language we must look to the plain and ordinary meaning of the language and

the "cardinal rule is that the words in statutes must be given their ordinary and plain meaning." *Sanders v. Jackson*, 209 F. 3d 998, 999 (7th Cir. 2000). To do this we must not only reference dictionaries, but also must discern how the phrase would have been interpreted at the time of its creation. *Id.* Plaintiffs contend because the fees were inaccurate, they were not "properly disclosed." 15 U.S.C. § 1693b(d)(3)(C). To interpret "properly disclosed," we lack direct guidance from hearings or commentary to ascertain the meanings and must look to the plain language because "divining congressional intent from an absence of expression is a quagmire that we must try to avoid." *Mace v. Van Ru Credit Corp.*, 109 F. 3d. 338, 343 (7th Cir. 1997) (referring to *Jenkins v. Heinz*, 25 F. 3d 536, 539 (7th Cir. 1994)).

*Black's Law Dictionary* does not define "proper," but states that "disclosure" is "[t]he act or process of making known something that was previously unknown." BLACK'S LAW DICTIONARY 477 (7th ed. 1999). To "make" is defined as "[t]o cause something to exist-to make a record" and to "know" is "having or showing awareness or understanding; well-informed." *Id.* at 967, 876. We also refer to *Webster's* to discern the plain meaning and find "proper" is defined as "[a]ppropriate: suitable. . . [m]eeting a required standard of validity or competence . . . [r]igorously correct: EXACT. . . [t]horoughly: completely." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 943 (1984). *Webster's* defines "disclosure" as "[t]he act or process of disclosing" and to "disclose" as to "REVEAL. . . [t]o make known." *Id* at 383. In light of these definitions, we may deduce that an inexact, inaccurate, or incomplete notice may result in the consumer not being well-informed, or lacking understanding and thus may be considered improper.

In the absence of relevant case law, the Seventh Circuit has borrowed inferences from other statutory construction for interpretation purposes. *Mace*, 109 F. 3d at 342; *see also Cobb v. Monarch*

*Fin. Corp.*, 913 F. Supp, 1164, 1174 (N.D. Ill. 1995). Examples that we turn to include the Truth in Lending Act ("TILA") and the Fair Debt Collection Practices Act ("FDCPA"), which relate to EFTA in that all are designed to protect consumers and appear "under the capacious umbrella of the Consumer Credit Protection Act." *Mace*, 109 F. 3d at 343; *see also* 15 U.S.C. § 1601 *et seq*; 15 U.S.C. § 1640; 15 U.S.C.§ 1692(e); 15 U.S.C. § 1693. Though they are found in different subchapters and the congressional intent is slightly different, they are nevertheless instructive as to the interpretation of "properly disclose." *Id.*

The TILA explicitly explains how creditors may adhere to the disclosure standard; creditors must "clearly and conspicuously disclose" information to the obligor. 5 U.S.C. § 1635(a). To comply with the rescission disclosure statements, specific guidelines tell us "a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." 12 C.F.R. § 226.23(b)(1). Also, TILA requires creditors to disclose clearly and accurately any finance charge that the consumer will bear under a transaction. *Walker v. Wallace Auto Sales*, 155 F.3d 927, 930 (7th Circuit 1998) (referring to 15 U.S.C. §1638(a)(3)). These rigid disclosure obligations were purposeful, as they were intended to prevent creditors from dodging TILA's purpose by hiding costs and fees. *Id.* Furthermore, under TILA "[g]iving . . . two separate disclosure statements for a single loan transaction is a violation." *Cf. Vance v. Nat'l Benefit Ass'n*, No. 99 C 2627, 1999 U.S. Dist. LEXIS 13846, at *3 (N.D. Ill. Aug. 30, 1999) (internal quotation marks and citation omitted). Although errors in an actual rate or finance charge are not a *per se* TILA violation, these inaccuracies can quickly manifest into one. *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 757 (7th circuit 2000). When a creditor first learns of the dissemination of inaccurate information and fails to correct that error, then a violation may very well ensue. *Id.* (citing 12 C.F.R. § 226.22 n.45d); *see also In*

*re Cox*, 114 B.R. 165, 168 (Bankr. C.D. Ill. 1990) (stating that except in situations where the creditor in good faith miscalculated and when that error is promptly corrected, an inaccurate amount constitutes a TILA violation).

Similarly, in an FDCPA context, the disclosure requirements under § 1692e(11) of the FDCPA are clearly explained. The initial communication must inform that there is a debt to be collected, and subsequent communication must disclose that the letter comes from a debt collector. *Ross v. Commercial Fin. Servs., Inc.*, 31 F. Supp. 2d 1077, 1078 (N.D. Ill. 1999). Failure to make such disclosures is defined as a deceptive debt collection practice. *Id.* (referring to 15 U.S.C. § 1692e(11)). In their communications, debt collectors are prohibited from ignoring the statute's purpose by making the required disclosures in a confusing or difficult to understand format. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 1999); *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1058 (7th Cir. 1999) (stating that the FDCPA also mandates that the debt collector refrain from confusing the debtor by "undercutting the required notice or implying a different obligation"); *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518 (7th Cir. 1997) (finding that even though information is considered as properly included, it will not be proper if the information is overshadowed or contradicted with other messages in the disclosure). In the FDCPA context, the Seventh Circuit has determined that confusion is a "question of fact rather than a question of law, so plaintiffs are entitled to present empirical evidence" to establish the prohibited confusing language. *Id.* The Seventh Circuit has also reversed a dismissal when they found there was some possibility of confusion. *Id.* In that case, they reasoned that because there could be some possible evidence to support the allegations of confusion, the claim was legally sufficient. *Id.*

In a motion to dismiss we must examine "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 328 (7th Cir. 1999) (citing *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997)). Plaintiffs have alleged that because they received two contradictory disclosure statements that the statements were improper under EFTA. Whether or not FAB's notices violate EFTA is a factual issue and though the claim may eventually fail on the facts, "assessing factual support for a suit is not the office of Rule 12(b)(6)." *Johnson*, 169 F.3d at 1059. Because Plaintiffs have raised this question of fact, they should be entitled to present evidence to establish that such confusion violates 15 U.S.C. § 1693.

Here, we are not provided with such clear guidelines in the statute, commentary, or case law as to how to treat contradicting fee notices. EFTA's purpose is to protect the consumer. The need for accurate disclosure is not explicitly stated as it is by TILA, nor do we find that the fee notices are free from conflicting obligations as is prohibited by FDCPA. But we feel that it is reasonable to conclude that such guidelines in other consumer protection statutes can apply to the types of disclosure that were contemplated under EFTA. We agree with the Ninth Circuit's characterization that neither EFTA nor the ATM Reform Act were enacted to regulate the actual service fees that are charged by financial institutions; they were enacted to promote disclosure. *Bank of America*, 309 F.3d at 564. (referring to *Kashanchi v Texas Commerce Med. Bank*, 703 F. 2d 936, 940-41 (5th Cir. 1983). Nevertheless, because EFTA's purpose is to promote disclosure, prevent fraud, and to allocate liabilities, it is evident that its primary objective, as stated in the statute, is the provision of individual consumer rights. *See* 15 U.S.C. § 1693b. With this objective in mind, we must construe the language as reaching to protect the consumer. Taking all of Plaintiffs assertions as true, Plaintiffs

have alleged facts that could conceivably support a basis for recovery under 1693b(d)(3). Therefore, at this juncture, we find that Plaintiff's have alleged a legally sufficient claim, and therefore we deny Defendant's motion to dismiss.

In the alternative, Defendant moves to strike portions of Plaintiffs' complaint that are over one-year old because they are barred by the statute of limitations. Rule 12(f) allows a court to strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Anderson v. Bd. of Educ.*, 169 F. Supp. 2d 864, 867 (N.D. Ill. 2001). In general, motions to strike are not favored and will only be granted if the language in the pleading bears no possible relation to the instant case and if the moving party is prejudiced. *Id.*

Here, Defendant does not complain that the September 2003 transactions that support Plaintiffs' complaint are redundant, immaterial, impertinent, or scandalous. Furthermore, Defendant will not be prejudiced because absent the 2003 transaction, Plaintiffs' complaint survives. Defendant argues that the limitations provision in § 1693 states that an action should be initiated within one year from the date of the occurrence of the violation and that when this limitations period has expired, a claim is extinguished and cannot thereafter be prosecuted. While Defendant's argument is sound, Defendant challenges the merits of Plaintiffs' claims and challenging the sufficiency or merit of a complaint should be raised in a motion to dismiss or in a motion for summary judgement. *Peterson v. Baloun*, 715 F. Supp. 212, 213-14 (N.D. Ill. 1989). Therefore, because Defendant has not established the requisite elements under Rule 12(f), its motion to strike portions of the complaint due to the one year of the statute of limitations is denied.

## Conclusion

Based on the foregoing, Defendant's motion to dismiss Plaintiffs' complaint is denied. Defendant's motion to strike portions of Plaintiffs' complaint is also denied.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: APR 28 2005