IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| THOMAS BURNS and MARK LARSEN, individually and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | No. 04 C 7682 |
| v. ) ) | Judge Plunkett |
| FIRST AMERICAN BANK, ) ) | |
| Defendant. ) | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**I.     Introduction**

During the proposed class period,[1] First American Bank's Chicago Hilton and Tower ATMs posted a $2.00 surcharge fee on the machine and a $2.50 surcharge fee on the screen.[2] This is undisputed. Because the Electronic Fund Transfers Act requires ATM operators like FAB to properly disclose – twice – any surcharge before imposing one,[3] Plaintiffs filed a class action complaint on behalf of all persons who, like themselves, used the ATMs and were charged a fee when these literally contradicting notices were posted. Therefore, the single predominating

---

[1]     From one year prior to the filing of the Plaintiffs' complaint (November 28, 2004) until December 1, 2004 (the date Defendant admits it changed the fee notice, after being served with the instant suit). First American Bank will be referred to herein as "FAB."

[2]     See Exhibit 1, Monteagudo Dep., pp. 10-16, where he testifies to the posting of FAB H 0076 and FAB H 0077 on the ATMs at issue. (FAB H 0076 and FAB H 0077 are attached hereto as Exhibit 2).

[3]     15 U.S.C. § 1692b(d)(3).

common question for Plaintiffs and each class member is whether FAB violated the EFTA by posting literally contradictory fee notices.[4]

Although Defendant would like to argue otherwise, the EFTA expressly provides for class action remedies.[5] And class action treatment is especially appropriate in cases involving the use of a standard form (here, two form ATM notices).[6] Left with that, FAB tries to impugn Plaintiffs' certification motion by claiming that each ATM user would have to testify that he or she saw the ATM notices, read them, and was confused by them in order to qualify as a class member. This position, however, is contrary to both the language of the statute and relevant Seventh Circuit case law, which focus on the violative conduct and not the subjective state of mind of the consumer. Therefore, Plaintiffs' certification motion should be granted.

## II. Legal Discussion

### A. Common issues predominate as required under Rule 23(b)(3)

FAB wrongly argues that Plaintiffs cannot establish predominance under Rule 23(b)(3). But here, common, not individual, issues predominate. The common question, applicable to the Plaintiffs and each class member, is whether FAB violated the ATM surcharge notice requirements set forth in EFTA § 1693b(d)(3).

In its opposition papers, FAB claims that there are two individual issues: (1) whether the class members saw the notice, and (2) whether the class members were confused by the notice. These issues are red herrings in an EFTA claim for only statutory damages.

---

[4]   15 U.S.C. § 1693b(d)(3)(C), prohibiting fees not properly disclosed.

[5]   15 U.S.C. § 1693m(a)(2)(B).

[6]   *See, e.g., Taylor v. Halsted Financial Services, LLC*, No. 99 C 2466, 2000 U.S. Dist. LEXIS 384, *23 (N.D. Ill. Jan. 13, 2000) (report and recommendation from Magistrate Judge Schenkier recommending that EFTA claim be certified because a standard form was being challenged).

No EFTA provision requires ATM users to prove actual confusion to prevail. Moreover, any argument that a confusion or reliance standard should be read into the statute would only conceivably apply to claim for actual damages, not statutory damages, as Plaintiffs seek to recover for the class members in this case.

Instead, the common questions that are relevant to Plaintiffs' case include:

(1) Did Defendant post a fee notice in a prominent and conspicuous location on or at the ATM?[7]

(2) Did Defendant include a notice, explaining that an ATM surcharge fee would be charged and the amount of that fee, on the ATM screen?[8]

Because FAB's machine and screen ATM notices directly contradicted one another, both notices are rendered ineffective. Where a statute requires notice to be given, and that notice is clearly contradicted on its face, the courts do not inquire whether there was actual confusion. In the Seventh Circuit:

> The general rule is that if a statement is literally false, the court may grant relief without reference to the reaction of buyers or consumers of the product. On the other hand, if a statement is not literally false, the court may find that it is impliedly misleading only if presented with evidence of actual consumer deception.[9]

Here, the fee notice on the outside of the FAB ATM was "literally false" because it stated that a $2.00 surcharge would be imposed when in reality, a $2.50 surcharge was being deducted from the ATM users' accounts.[10] Because the Defendant's notices are literally false and the EFTA imposes strict liability for violations, actual confusion is irrelevant.

---

[7] See 15 U.S.C. § 1693b(d)(3)(B)(i).

[8] See 15 U.S.C. § 1693b(d)(3)(B)(ii).

[9] Avila v. Rubin, 84 F.3d 222, 227 (7th Cir. 1996).

[10] See Compl. at ¶¶ 18-20 and ¶¶ 24-26.

This renders Defendant's cited cases involving a "state of mind" analysis inapposite. Class membership does not depend upon a personal state of mind, but rather, is a mechanical identification of persons, (based upon the Bank's records), as to who used the ATMs at issue during the time period in question.[11]

### 1.   The EFTA is a strict liability statute

In *Bisbey v. D.C. National Bank*,[12] the D.C. Circuit Court of Appeals specifically stated that the EFTA is a strict liability statute.[13] This holding is consistent with the plain language of the statute, which provides, "... any person who fails to comply with any provision of this title [15 U.S.C. § 1693 *et seq.*] with respect to any consumer, except for an error resolved in accordance with section 908 [15 U.S.C. § 1693f] is liable to such consumer...."[14]

Because of the clear circuit authority and statutory language supporting application of a strict liability standard, FAB overstates the significance of the district court's decision in *Bartashnik v. Bridgeview Bancorp, Inc.*[15] The *Bartashnik* court, ruling on a motion to strike affirmative defenses, suggested in dicta that it might disagree with the plaintiff as to the EFTA's strict liability standard. But the court only pointed to the vandalism and bona fide error defenses found in EFTA §§ 1693h(d) and 1693m(c), suggesting that the statute's inclusion of these

---

[11]   Defendant argues that Plaintiffs are somehow judicially estopped from arguing confusion is not an issue because of arguments raised in response to the Bank's motion to dismiss. This is simply wrong. The reason the issue of confusion was ever raised was merely to explain that confusion was a <u>necessary</u> result of two notices which were literally false because they directly contradicted one another. When notices are literally false, consumers do not testify as to their confusion but rather, the judge may make a summary determination on the issue. *Avila*, 84 F.3d at 227.

[12]   793 F.2d 315 (D.C. Cir. 1986).

[13]   *Id.* at 317-18.

[14]   15 U.S.C. § 1693m(a).

[15]   No. 05 C 2731, 2005 U.S. Dist. LEXIS 33657, *8-9 (N.D. Ill. Dec. 15, 2005).

4

affirmative defenses meant no strict liability.[16] With all due respect to the district court, this suggestion is incorrect. The language used in EFTA's bona-fide-error-defense section is identical to that used in the Fair Debt Collection Practices Act,[17] and the FDCPA is a strict liability statute.[18] Requiring intent to find an EFTA statutory violation would render Congress' inclusion of a bona fide error defense superfluous and meaningless.

### 2. To recover statutory damages under the EFTA, a plaintiff only needs to prove the statute was violated, not that he or she was misled

Because the EFTA (like the FDCPA) has no intent requirement, Plaintiffs and the class members only need to show that a violation occurred in order to recover statutory damages.[19] And because the Act provides for an award of statutory damages in the context of a class action, this Court does not need to engage in any proximate cause analysis (*i.e.*, what actual damage an individual suffered as a result of the violative ATM notice). This means that whether Plaintiffs and the class members were actually confused or misled by the ATM notices is irrelevant. Because the class is not seeking actual damages,[20] all that matters is that FAB's notice was incorrect:

---

[16] *See id.*

[17] 15 U.S.C. § 1692k(c) ("FDCPA").

[18] *See, e.g., Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 742-43 (N.D. Ill. July 8, 2003) (explaining that Seventh Circuit assumes strict liability attaches to FDCPA violations because there is no intent requirement under the Act).

[19] ATM operators may not charge a fee if the ATM surcharges are improperly disclosed. *See* 15 U.S.C. § 1693b(d)(3)(C) ("No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless – (i) the consumer receives such notice in accordance with subparagraph (b)…").

[20] Plaintiffs' prayer for relief does not specifically seek actual damages. *See* Compl. To the extent that the complaint could be read as requesting any, such request is withdrawn.

5

Defendant urges, further, that his letter could not have been confusing to its recipient, Plaintiff's lawyer. For purposes of this court's Section 1692g analysis, however, the recipient of the letter is not critical. Under Seventh Circuit case law, a plaintiff may recover for statutory penalties under the Act, even if the debtor has not read the letter or actually been confused by it. *Bartlett*, 128 F.3d at 499 (to recover statutory damages under the Act, a plaintiff only needs to demonstrate that the statute was violated, not that the person to receive the letter was misled by it).[21]

After identifying the statutory violation, the court determines the amount of statutory damages to be awarded, based upon "the frequency and persistence of noncompliance, the nature of such noncompliance, the resources of the defendant, the number of persons adversely affected, and the extent to which the noncompliance was intentional."[22] The ATM user's state of mind or level of confusion is not a relevant issue.

### 3. The only EFTA case on point confirms that Plaintiffs only need to prove reliance to obtain actual damages

There is relatively little case law interpreting the EFTA – and only one non-binding case that the parties can identify – where class action status was sought for an ATM fee notice violation.[23] Although the class was not certified in the Florida *Polo* case, there are two glaring differences between that case and the instant matter. First, the *Polo* case sought to certify a national class consisting of consumers who used potentially thousands of different ATMs, not two machines located in one place. Second, the *Polo* class sought to recover actual damages – the certification motion was not purely limited to a request for statutory damages, as is this one.

---

[21] *Blum v. Lawent*, 2003 U.S. Dist. LEXIS 16050, *15 (N.D. Ill. Sept. 8, 2003) (*citing Bartlett v. Heibl*, 128 F. 3d 497, 499 (7th Cir. 1997)). *See also Kort v. Diversified Collection Services, Inc.*, No. 01 C 0689, 2001 U.S. Dist. LEXIS 20988 (N.D. Ill. Dec. 17, 2001) (whether the plaintiff was actually confused upon receipt of a collection letter is irrelevant).

[22] 15 U.S.C. § 1693m(b)(2).

[23] *Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399, 408-09 (M.D. Fla. 2004).

6

These differences are highlighted because the *Polo* district judge focused on the following problems, none of which exist here:

> The ATMs may be owned by E*Trade; may be owned by Gooding's; may be owned by one of 8,000 merchants other than Gooding's; may be in any state; may be subject to varying site location agreements that affect the parties' rights and obligations; may have been purchased or leased pursuant to a sales agreement or rental agreement that affects the parties' rights and obligations; may impose varying transaction fees collected by E*Trade or by a merchant; may impose varying transaction surcharges collected by E*Trade or by a merchant; may collect no transaction fees and no transaction surcharges from some consumers under varying circumstances, such as customers of certain banks; may have "overcharged" or "undercharged" the consumer when measured against the posted fee; and my [sic] service the customers of financial institutions that do not debit consumer's accounts for ATM fees.[24]

While there were over 15,000 ATMs in the *Polo* case, there are only two here. FAB admits that it is both the owner and operator of both ATMs and sets the transaction-fee amount charged.[25] And FAB has already produced the list of transactions for the proposed class members that identify their respective banks, the class members' card number, and the $2.50 transaction surcharges assessed.[26] Therefore, none of the ambiguities identified by the *Polo* court exist here. Moreover, in *Polo*, Plaintiffs' counsel sought to certify an actual damages class of consumers using potentially over 15,000 nationwide ATMs. Here, Plaintiffs' counsel seeks to certify a statutory damages class of already identified users at only two ATMs, in one location.

FAB apparently misunderstands this difference and tries to defeat class certification by using the *Polo* magistrate judge's report and recommendation discussion of why common issues did not predominate for an actual damages class. The magistrate judge felt that actual damages

---

[24] *Id.* at 401-02.

[25] *See* Exhibit 3, Defendant's Response to Plaintiffs' Requests to Admit Facts at Nos. 22-45. Excerpts attached.

[26] *See* Exhibit 4, exemplar page of redacted transaction log from FAB.

could not be recovered because the court would have to consider "whether the consumer actually saw and relied on an improper notice."[27] The court never ruled that reliance had to be shown to recover statutory damages. In fact, the magistrate judge explained that the *Polo* defendants did "not contend that claimants must show detrimental reliance to recover statutory damages."[28]

Because no causation or reliance analysis is necessary when seeking statutory damages, FAB has not identified any other supposed individual issues that would defeat commonality, typicality, adequacy or predominance. For each factor, FAB claims that certification is improper because this Court will have to inquire as to whether the Plaintiffs and each class member were confused.[29] Put another way, without the "confusion" argument, FAB has no other attack on commonality, typicality, adequacy or predominance. Having already stipulated to numerosity, the only bone of contention is the superiority of the class action mechanism.

### B. The proposed class is manageable and notice can issue

The Rule 23(b)(3) superiority requirement is met in this case. FAB argues against superiority by stating that, to identify each class member, a mini-trial would have to be conducted to determine whether that proposed member was confused by the contradictory notices. This analysis is wrong. First, the proposed class member does not have to testify that he was confused because no actual damages are sought – to recover statutory damages, a plaintiff

---

[27] *Polo*, 232 F.R.D. at 408.

[28] *Id.*

[29] *See* Defendant's Opp. at p. 14-15 (Bank argues: "commonality is lacking here due to the individualized nature of the liability inquiry, which is focused on the 'confusion' of each putative class member") (Bank argues: typicality not met because commonality not met) (Bank argues: no adequacy because "the plaintiffs have made no showing that Messrs. Burns and Larsen were each 'confused' as a result of the relevant notices"). *See also* Defendant's Opp. at p. 7 (Bank argues: individual issues predominate because class members must show they were actually confused).

8

only needs to show that the statute was violated, not that he was misled.[30] Second, the proposed class member does not have to testify that he was confused because the Defendant's posted ATM notice was "literally false" – it disclosed a $2.00 surcharge when in reality, there was a $2.50 surcharge.[31]

Relying on the affidavit of one of its vice presidents, Eduardo Monteagudo, FAB tries to argue that the cost of identifying the class members and distributing damages is too high to render the class action device appropriate. A.B. Data, Ltd., a national class action administration service, testifies to the contrary. In the affidavit attached to this reply, A.B. Data explains how notice can issue to the class in a streamlined and cost-effective manner.[32]

Moreover, even though Monteagudo's affidavit seems to claim that identifying each financial institution and then obtaining the identity of the ATM card user would be a Herculean task, his deposition testimony suggests otherwise. Persons who used their ATM cards at the two machines can be identified by FAB's already-produced records.[33]

Through the Star network, which allows the ATM to communicate with the ATM users' home bank, FAB receives a PAN (or primary account number).[34] The PAN's first six digits correspond to a particular financial institution.[35] The PAN's last ten digits correspond to the "unique identification of a cardholder."[36] Because the cardholder and their home bank are

---

[30] *Blum*, 2003 U.S. Dist. LEXIS at *15.

[31] *Avila*, 84 F.3d at 227.

[32] See Exhibit 5, Affidavit of Anya Verkhovskaya.

[33] See Exhibit 4, exemplar page of redacted transaction log from FAB.

[34] See Exhibit 1, Monteagudo Dep., p. 30, ln. 3-15.

[35] See Exhibit 1, Monteagudo Dep., p. 33, ln. 2-24, p. 34, ln. 1.

[36] See Exhibit 1, Monteagudo Dep., p. 36, ln. 23-24, p. 37, ln. 1-3.

9

readily identifiable from the PAN, direct deposit into the class members' bank accounts of a statutory damages award can be accomplished. Monteagudo testified that money can be refunded electronically back into an ATM user's account simply through the use of the PAN, along with a text message.[37] This means that damages can be electronically inserted into the class members' bank accounts and a class notice (or notice to consult another site for more information) can accompany the deposit.

Even if it were ultimately determined that providing notice in this manner is inappropriate, the class should still be certified. Rule 23(c)(2)(B) provides that the court must direct "the best notice practicable under the circumstances, including individual notice to all members *who can be identified through reasonable effort.*"[38] It does not require individual notice in all circumstances. For example, in a recent class action certified for settlement purposes under the EFTA, Judge St. Eve approved the following notice plan: (1) notice was published in the Chicago Tribune on two separate occasions; and (2) notice was posted on the violative ATM and on the Internet from the date of preliminary approval to the date of final approval.[39]

The notice plan previously approved in this district, combined with the information provided by A.B. Data and FAB's own affiant, demonstrates that notice is possible and is not an obstacle to certification of this class.

---

[37] *See* Exhibit 1, Monteagudo Dep., p. 50, ln. 12-22; p. 55, ln. 10-22.

[38] Fed. R. Civ. P. 23(c)(2)(B) (Emphasis added).

[39] Case No. 05 C 3562, *Machiela v. Trizec Holdings, Inc.*

## III. Conclusion

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for class certification and certify a class of:

> All persons nationally who, from November 28, 2003 to the date Defendant has represented the notice was corrected: (1) were charged a "transaction fee" for the use of ATMs (Nos. S1A5260 and S1A5261) located in the Chicago Hilton and Towers at 720 South Michigan Avenue in Chicago, Illinois; (2) in an amount different from the "transaction fee" disclosed on the fee notice posted on the outside of those ATMs.

Respectfully submitted,

By: /s/ Lance A. Raphael
One of Plaintiffs' Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL 60602
Tel: (312) 782-5808
Fax: (312) 377-9930

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906
Fax: (212) 248-7908